UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,           )<br>                                                           )<br>                          Plaintiff,        )<br>       vs.                                            )<br>                                                           )<br>JAMES EARL MAGEE,                  )<br>                                                           )<br>                          Defendant.    )<br>                                                           ) | Case No.: 2:21-cr-00171-GMN-VCF-1<br><br>**ORDER** |

Pending before the Court is Defendant James Earl Magee's ("Defendant's) Motion in Limine, (ECF No. 34), to which the Government filed a Response, (ECF No. 36).

For the reasons discussed below, the Court **DENIES** Defendant's Motion in Limine.

**I.    BACKGROUND**

On June 16, 2021, a grand jury issued an Indictment charging Defendant with one count of Theft of Government Money or Property, in violation of 18 U.S.C. § 641, and one count of Mail Theft by Employee, in violation of 18 U.S.C. § 1709. (*See* Indictment 1:71–2:14, ECF No. 1). On November 18, 2022, the Government provided Defendant notice that it intended to introduce "evidence relating to [Defendant's] purchase and negotiation of two $1.00 money orders using Candice Sanders[,]'" Defendant's then-fiancé, identity. (Mot. in Limine ("MIL") 2:2–4, ECF No. 34). The specific facts relevant to the proffered evidence are outlined below.

On June 28, 2016, Defendant, a United States Postal Service ("USPS") employee, assisted Doina Dragulescu ("Dragulescu") with purchasing and mailing three postal money orders worth $2,340.27. (Resp. 1:19–21, ECF. No. 36). Dragulescu entrusted Defendant with mailing her money orders to her bank in Florida. (*Id*. 1:23–2:2).  According to the Government

///

however, Defendant kept the money orders and tried to cash them for his own personal gain. (*Id*.).

Over the next two days, the Government contends that Defendant attempted to test the viability of cashing Dragulescu's money by: (1) cashing a $1.00 postal money order that was issued to Candice Sanders ("Sanders") and endorsed with Defendant's signature; and (2) cashing at $1.00 money order at a different bank that was issued to Sanders but endorsed with Defendant's signature. (*Id.* 2:3–3:5, 5:1–9). The Government argues that after testing these money orders, Defendant subsequently cashed Dragulescu's postal money orders on July 2, 2016, and July 6, 2016. (*Id*. 3:6–10, 5:9–11). Defendant now moves to exclude his prior bad acts related to the money orders issued to Sanders described above. (*See generally* MIL). The Court discusses Defendant's Motion in Limine below.

## II.    LEGAL STANDARD

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a). In order to satisfy the burden of proof for Federal Rule of Evidence ("Fed. R. Evid.") 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [Fed. R. Evid.] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)). In limine rulings "are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41. Judges have broad discretion when ruling on motions in limine. *See Jenkins v.*

1  *Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  However, a motion in limine should
2  not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland, Inc.*,
3  539 F. Supp. 2d 316, 323 (D.D.C. 2008).  To exclude evidence on a motion in limine, the
4  evidence must be inadmissible "on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec.*
5  *Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).  "Unless evidence meets this high standard,
6  evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and
7  potential prejudice may be resolved in proper context."  *Hawthorne Partners v. AT&T Tech.,*
8  *Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

## III. DISCUSSION

Broadly speaking, Defendant's Motion in Limine argues that the proffered prior bad acts should be excluded for three reasons: (1) the prior bad acts are not inextricably intertwined with the criminal transaction Defendant is charged with; (2) the prior bad acts do not further a permissible, non-propensity purpose under Fed. R. Evid. 404(b); and (3) even if the prior bad acts were admissible for a non-propensity purpose under Fed. R. Evid. 404(b), they would nevertheless be excluded under Fed. R. Evid. 403 because the probative value of the proposed evidence is substantially outweighed by the risk of unfair prejudice and risk of confusing the jury. (MIL 2:20–3:2).  The Court will first address whether the proffered prior bad acts are inextricably intertwined with the current charges.

### A. Inextricably Intertwined Evidence

Defendant contends the prior bad acts are not inextricably intertwined with the current charges because they are "neither part of the same criminal transaction as the charged conduct, nor are they necessary to allow the government to provide a complete story about the commission of the crime." (*Id*. 4:14–16).  In response, the Government contends the prior bad

///

///

acts are necessary to preserve its narrative integrity in presenting the case, and to rebut Defendant's potential defense that he was framed.[1] (Resp. 8:3–10:6).

The Fed. R. Evid. 404(b) analysis is not required for "other acts" evidence if such evidence is actually "inextricably intertwined" with the charged offense. *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987). Evidence is "inextricably intertwined" when it (1) constitutes a portion of the transaction giving rise to the criminal charge; or (2) may be necessary to allow the prosecution "to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). "In determining whether particular evidence is necessary to the prosecution's 'coherent and comprehensible story' [the relevant inquiry concerns] 'whether the evidence bears directly on the charged crime." *United States v. Wells*, 879 F.3d 900, 928–29 (9th Cir. 2018) (quoting *United States v. Dorsey*, 677 F.3d 944, 952 (9th Cir. 2012) (internal quotation marks omitted)). "There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *Id.* (quoting *Vizcarra-Martinez*, 66 F.3d at 1013).

Here, the proffered prior acts bear directly on the charged crime. Specifically, the prior acts provide necessary context in establishing Defendant's alleged development and execution of the criminal scheme. *See Vizcarra-Martinez*, 66 F.3d at 1013 ("It is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime."). The prior acts demonstrate Defendant's preparation and planning by first testing the viability of cashing the money orders addressed to Sanders and anticipating how he could avoid detection prior to cashing Dragulescu's money orders. This in turn helps establishes a coherent timeline for the

---

[1] The Government did not address whether Defendant's prior conduct constitutes part of the same transaction as the offenses currently charged. (*See generally* Resp.). Therefore, the Court's inquiry will focus on whether the prior bad acts are necessary to offer a coherent narrative regarding the commission of the crime.

jury by illustrating why Defendant waited to cash Dragulescu's money orders. *See United States v. Ramirez*, 967 F.2d 1321, 1327 (9th Cir. 1992) (explaining that inextricably intertwined evidence is "'direct evidence,' used to flesh out the circumstances surrounding the crime with which the defendant has been charged."). Thus, the prior bad acts are direct evidence of how and why Defendant decided on certain actions in allegedly executing the scheme. *See United States v. King*, No. 08-cr-002, 2009 WL 1045885, at *2 (D. Idaho Apr. 17, 2009) ("Evidence 'inextricably intertwined' with the conduct underlying the offense may be admissible even if not directly relevant to the elements of the crime.").

Furthermore, Defendant's alleged preparation in committing the offense bears directly on the crime to the extent it is used to rebut Defendant's anticipated defense that he was framed. (Resp. 4:12–16, 9:19–23). In *United States v. Daly*, the Ninth Circuit explained that a "jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." 974 F.2d 1215, 1216–17 (9th Cir. 1992). Thus, evidence that Daly participated in an eleven-hour shoot right before his arrest was admissible "to put Daly's illegal conduct into context and to rebut his claims of self-defense." *Id.*

As in *Daly*, the value of the proffered prior bad acts is derived from the context it provides, and the potential defenses it rebuts. *See Daly*, 974 F.2d at 1217 ("[E]vidence concerning other acts that are inextricably intertwined with the charged acts may be admitted . . . to put [defendant's] illegal conduct into context and to rebut his [defenses]."). Omitting Defendant's conduct from the Government's narrative would obscure why Defendant allegedly took certain actions, placing the jury in the precise void warned of by the Ninth Circuit. Accordingly, the Court finds that the prior bad acts are inextricably intertwined with the charged offenses.

### B. Fed. R. Evid. 404(b) Evidence

Even if the prior bad acts were not inextricably intertwined, they are still admissible under Fed. R. Evid. 404(b). Here, the Government aims to offer the prior bad acts to show Defendant's preparation, plan, knowledge, absence of mistake, and consciousness of guilt.[2] (Resp. 10:1–11:6).

Under Fed. R. Evid. 404(b), evidence of crimes, wrongs, or other acts is not admissible to prove the character of an accused in order to show action in conformity with that character. *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993); Fed. R. Evid. 404(b)(1). However, this evidence can be admitted under Fed. R. Evid. 404(b) if the evidence is used to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b)(2). In order to be properly admitted under Fed. R. Evid. 404(b), the evidence must satisfy four requirements: "(1) it must prove a material element of the offense for which the defendant is now charged; (2) in certain cases [where knowledge or intent are at issue], the prior conduct must be similar to the charged conduct; (3) proof of the prior conduct must be based upon sufficient evidence; and (4) the prior conduct must not be too remote in time." *Arambula-Ruiz*, 987 F.2d at 602.

---

[2] Defendant additionally contends that the Government's Notice failed to state with sufficient particularity how the proposed prior bad acts satisfy one of the enumerated non-propensity reasons under Fed. R. Evid. 404(b)(2). (MIL 7:1–14). Defendant is correct that in determining the admissibility of prior bad acts for trial, the Government "must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982). However, Defendant is mistaken in asserting that "that the Government must make this demonstration in its notice to a defendant." *United States v. Singh*, No. 2:13-cr-00084, 2017 WL 4700042, at *7 (E.D. Cal. Oct. 19, 2017). Instead, the Government "need only 'provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial.'" *Id*. (quoting Fed. R. Evid. 404(b)(2)(A)); *see also United States v. Castro*, No. 2:19-cr-00295, 2022 WL 4359273, at *2 (D. Nev. Sept. 20, 2022) ("[T]he Government need only provide a generalized notice provision apprising Defendants of the general nature of the evidence of extrinsic acts."). Here, the Government's Notice provision sufficiently apprised Defendant of the general nature of the extrinsic acts it intends to offer at trial.

As an initial matter, the parties do not dispute that the prior bad acts are too remote in time. (*See generally* MIL); (Resp.). Therefore, the Court's discussion will be limited to an examination of the other three requirements.

### 1. Prove a Material Point

As stated, the Government contends the prior bad acts show Defendant's preparation, plan, knowledge, absence of mistake, and consciousness of guilt in executing the criminal scheme. (Resp. 10:1–11:6). The Court agrees.

Prior bad acts evidence must "tend[] to prove a material point" in the case. *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). As the Government identifies, the prior bad acts lend itself to several material points in this case, namely Defendant's: (1) opportunity and ability to cash postal money orders that were addressed from and made payable to others; (2) preparation and planning of the alleged scheme; (3) absence of mistake; and (4) knowledge to execute the scheme. *See, e.g.*, 18 U.S.C. § 641 ("First, the defendant *knowingly* . . . ."). Therefore, the proffered prior acts tend to prove a material point in this case.

### 2. Similarity to the Offense Charged

Defendant contends that the prior bad acts are dissimilar from the charged offense because the "charged conduct involves the theft of three money orders from a customer" while the proposed prior acts "constitute identity fraud." (MIL 8:18–23). In rebuttal, the Government argues that the two events are sufficiently similar because they both involve Defendant's use and abuse of his postal service position in wrongfully cashing money orders addressed to others. (Resp. 12:10–13:10).

Prior bad acts must be "similar to the offense charged." *Romero*, 282 F.3d at 688 (citing *United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000)). The Ninth Circuit has found that the degree of similarity required depends upon the evidentiary hypothesis the proponent of the evidence employs. *Arambula-Ruiz*, 987 F.3d at 603. Where the evidentiary theory is

knowledge, "the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *Id.* at 603 (quotation omitted); *see also United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005) (same). Similarly, where the evidentiary theory is intent, "the past conduct need not be identical to the conduct charged, but instead need only be similar enough to be probative of intent." *United states v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997). Finally, "[i]n cases involving the use of prior [bad acts] to show 'opportunity . . . preparation[,] or motive,' similarity may or may not be necessary depending upon the circumstances." *United States v. Johnson*, No. 14-cr-00412, 2015 WL 4747309, at *4 (N.D. Cal. Aug. 11, 2015) (quoting *Bibo-Rodriguez*, 922 F.2d at 1400).

Contrary to Defendant's characterization, the prior bad acts are sufficiently similar to the charged offense in that both involve Defendant's use of his position at USPS to wrongfully obtain and cash postal money orders made payable to others. *See United States v. Morris*, 649 F. Supp. 2d 968, 972 (D. Ariz. 2009) (finding that the prior acts were similar to the charged offense where both involved drunk driving although the prior offenses did not result in another's death). Thus, the prior bad acts make it more likely that Defendant knew of USPS protocols for cashing postal money orders, and how to bypass those protocols. These overarching similarities in turn, demonstrate Defendant's preparation towards executing the alleged scheme, absence of mistake, motive, and intent. *See United States v. Siddoway*, 1:21-cr-00205, 2022 WL 13922412, at *3 (D. Idaho Oct. 24, 2022) (concluding that evidence was sufficient to show an absence of mistake and intent where both situations shared "obvious overarching similarities"); *United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1402 (9th Cir. 1991) (finding that "the subsequent offense is relevant to show that the defendant could not have been duped in the first instance, because he repeated a similar, although not identical,

action on a subsequent occasion"). Accordingly, the Court finds that the similarity of the offense charged weighs in favor of admission.

### 3. Sufficient Evidence to Show the Prior Act Was Committed

Defendant contends there is insufficient evidence to show that Defendant in fact committed the prior bad acts. Specifically, Defendant argues that in the absence of Sanders' testimony at trial, there is insufficient evidence proving that Defendant fraudulently purchased the postal money orders in Sanders' name. (MIL 8:4–16).

The "Ninth Circuit has described the sufficiency element as a 'low threshold.'" *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). Further, the Ninth Circuit has articulated that witness testimony at trial is sufficient to satisfy this element. *See United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002) (holding that there was sufficient evidence to meet the "low threshold" for the third prong of the Rule 404(b) test because evidence of prior acts was admitted through witness testimony); *United States v. Wolfenbarger*, No. 16-cr-00519, 2020 WL 556879, at *2 (N.D. Cal. Feb. 4, 2020) (explaining that the Ninth Circuit has found that the sufficiency of evidence element has a "low threshold").

The Government has clarified that Sanders is expected to testify at trial, (Resp. 12:21–24), and included Sanders in the witness list it provided to the Court. (*See* Gov. Witness List 1:21–23, ECF No. 41). Additionally, the Government has provided evidence that the postal money order implicated in the November 18, 2022, Notice bears Defendant's driver's license number, was endorsed with his signature, and was found in his vehicle. (Resp. 12:1–4). Therefore, the Court is satisfied that sufficient evidence exists to show Defendant committed the prior bad acts.

Accordingly, the Court finds that the proffered prior bad acts satisfy Rule 404(b)'s requirements. Nevertheless, even if evidence meets the threshold for admissibility under Rule
///

404(b), it may still be excluded if it fails to satisfy Fed. R. Evid. 403. *See United States v. Mayans*, 17 F.3d 1174, 1183 (9th Cir. 1994).

### C. Fed. R. Evid. 403

Here, Defendant argues that the Government does not demonstrate that any evidence referenced in the November 18, 2022, Notice would be more probative than prejudicial. (*See* MIL 9:1–10:11). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Defendant claims the evidence referenced in the November 18, 2022, Notice is cumulative and will confuse the jury. (*See* MIL 9:1–10:11). However, the evidence is not cumulative as there is no other similar evidence relating to Defendant's actions prior to the charged offense which can be used to demonstrate his alleged preparation in executing the scheme, and rebut his potential defense that he was framed. Further, even if the evidence is cumulative as to demonstrating Defendant's knowledge to commit the scheme, "the [D]efendant does not offer a persuasive argument that this presentation of cumulative evidence is 'needless.'" *United States v. Thompson*, No. 19-cr-159, 2022 WL 1809372, at *4 (W.D. Wash. June 2, 2022)

As to confusion of the jury, the Government will only be able to use this evidence in a limited and focused way to show Defendant's preparation, plan, knowledge, absence of mistake, and consciousness of guilt. (*See* Gov.'s Resp. 11:23–13:4). Thus, the Court finds that the prejudicial effect of the evidence referenced in the November 18, 2022, Notice does not outweigh its probative value.

///
///
///

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion in Limine, (ECF No. 34), is **DENIED**.

**DATED** this __11__ day of December, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court